

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## AP-75,878

### CHRISTOPHER CHUBASCO WILKINS, Appellant

**v.**

### THE STATE OF TEXAS

### Appeal from Case 1002038D of the
### 297th Judicial District Court of
### Tarrant County

*WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, HERVEY. HOLCOMB, and COCHRAN JJ., joined. JOHNSON and KEASLER, JJ., concurred in the judgment.*

In March, 2008, a jury convicted the appellant, Christopher Chubasco Wilkins, of capital murder. Pursuant to the jury's findings on future-dangerousness and mitigation special issues, the trial court sentenced the appellant to death. The appellant now raises

sixteen points of error on direct appeal to this Court.[1] Finding no reversible error, we affirm the judgment and sentence of the trial court.

## I. BACKGROUND

The appellant gave statements to authorities that described his murders of Willie Freeman and Mike Silva. Freeman was a homeless man who lived in Fort Worth. Silva lived outside Fort Worth, but traveled into the city to purchase drugs. Freeman would show Silva where to buy drugs, and Silva would share his purchases with Freeman.

In October 2005, the appellant left a halfway house in Houston, stole a truck, and drove to Fort Worth. The appellant happened upon Freeman, who offered to sell him some drugs. But Freeman and his supplier tricked the appellant into buying a piece of gravel instead of a rock of cocaine. The men took $20 from the appellant and laughed at him. So the appellant decided to kill Freeman.

Over the next few weeks, Freeman and the appellant used drugs together. Freeman apologized for stealing from the appellant and gave him some drugs to make up for it.

On October 27, 2005, the appellant told Freeman that he had some guns and drugs stashed on the west side of Fort Worth. Silva agreed to drive Freeman and the appellant in Silva's vehicle. From the back seat, the appellant directed Silva to an area on the west side of Fort Worth. When they arrived at a deserted stretch of road, the appellant shot Freeman in the back of the head. Silva stopped the vehicle and tried to escape, but he got

---

[1] *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(h) ("The judgment of conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals.").

caught in his seatbelt. The appellant shot him once in the neck and twice in the head. The appellant then climbed into the driver's seat and began driving with Silva's body hanging outside of the vehicle, still entangled in his seatbelt. The appellant finally cut the seatbelt to remove Silva, and dumped the victims' bodies in a ditch at the side of the road.

About a week later, after two high-speed police chases, Silva's vehicle was recovered, and the appellant was apprehended.

## II. JURY SELECTION

In points of error one and two, the appellant argues that the trial court erroneously denied his challenges for cause against venire members Peterson and Kitchen. The appellant claims that both Peterson and Kitchen expressed an inability to follow the law governing the case.

The defense may challenge a potential juror for cause if the juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely."[2] When reviewing the trial court's ruling, we look at the entire record to determine if there is sufficient evidence to support the ruling.[3] We give the court's ruling considerable deference because the court is in the best position to evaluate the venire members' demeanor and responses.[4]

---

[2] TEX. CODE. CRIM. PROC. art. 35.16(c)(2).

[3] *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Cr. App. 2002).

[4] *Id.*; *see generally Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Cr. App. 1997) (Appellate courts afford

(continued...)

The appellant exhausted all his peremptory strikes and was granted one additional peremptory strike. Because the trial court granted an additional peremptory strike, the appellant cannot show harm from the alleged trial court errors unless he demonstrates that the trial court erred in denying his challenges to both venire members.[5]

The appellant argues that Kitchen "placed a burden of proof on both parties, including the defense." In support of his argument, the appellant cites the following excerpt from the record:

> [DEFENSE COUNSEL]: So I'm not confused about anything, I don't want to put words in your mouth or change your mind, it's your position knowing all the stuff that you know about that you still want us to put on evidence to show that he didn't participate in any type of killing or anything like that; is that your understanding?
>
> [KITCHEN]: Yes, I want to hear from both sides, the parties –
>
> [DEFENSE COUNSEL]: And that's your firm position. And I am not going to try to change your position, have you waiver [*sic*] in any way. That's your firm position; is that correct?
>
> [KITCHEN]: Yes, open-minded about both sides, both sides.
>
> [DEFENSE COUNSEL]: And knowing that the government has to prove its case to you beyond a reasonable doubt and knowing we don't legally have to show you anything, but that's still your position; is that correct?
>
> [KITCHEN]: Right. Right.

---

[4](...continued)
"almost total deference" to the trial court's resolution of issues that turn on an evaluation of credibility and demeanor.).

[5] *See Escamilla v. State*, 143 S.W.3d 814, 821 (Tex. Cr. App. 2004).

This excerpt, as well as the remainder of the *voir dire*, reflects that Kitchen "wanted" and "expected" to hear evidence from the defense, but understood that the State had the burden of proof and the defense was not "required" to present any evidence. A venire member's saying that she wants to hear evidence from the defense, and expects to hear such evidence, does not automatically disqualify her for having a bias or prejudice against the law placing the burden of proof on the State, or being unable to acquit the defendant unless the defense produced some evidence.

In the capital case of *Banda v. State*, although a "venireperson seemed to state at one point that appellant had a burden to bring forth evidence, she stated that she could follow the law, did not presume appellant to be guilty, and did not require appellant to put on evidence." We held, "The trial court could reasonably have found that her testimony as a whole did not reflect a bias against the law."[6]

Giving appropriate deference to the trial court's ruling, we cannot find that the trial court erred in denying the appellant's challenge for cause. Because we find no error with respect to Kitchen, we need not address Peterson.[7] Points of error one and two are overruled.

---

[6] 890 S.W.2d 42, 57 (Tex. Cr. App. 1994).

[7] *Id*.

## III. GUILT PHASE EVIDENCE

### A. Extraneous Offense

In his sixth point of error, the appellant argues that the trial court erred in excluding evidence of the appellant's confession to killing Gilbert Vallejo two days before the murders of Freeman and Silva. Detective Cheryl Johnson testified about the appellant's confession to the Freeman and Silva murders. The trial court permitted Johnson to testify on cross-examination that the appellant had also claimed responsibility for several murders and other offenses in a variety of states, but that she was unable to match these claims to reported offenses.

The trial court did not, however, permit the appellant to cross-examine Johnson regarding the appellant's confession to the Vallejo murder. The following excerpt contains the appellant's proffer, the State's objection to relevance, and the trial court's ruling:

> [DEFENSE COUNSEL]: Basically, during [Detective Johnson's] interviews of Mr. Wilkins, did he make – you've already talked about the other admissions to other homicides that he claimed he was involved in, did he also claim to be involved in a homicide of an individual in Fort Worth, Texas in 2005 by the name of Gilbert Vallejo outside a local bar in which he claimed that the individual was cursing at him in the Spanish language, using foul language at him, was intoxicated outside the bar while he was on the phone, and he claims to have shot this man? Is that right? Yes. And then that's it.
>
> [STATE]: Okay. Well, then yes, I object, Your Honor. It's nothing more than an attempt to blunt the State's punishment case. He's offered absolutely no suggestion as to why it's relevant. He's offered absolutely no suggestion that it is, in fact, a false confession, which is the whole reason he

got into the other extraneous murders, is his suggestion that they're false confessions. He has no evidence that this is false. Or if he has, he hasn't let the Court know. So he has not demonstrated relevance.

…

THE COURT: Okay. Any response to the relevancy objection?

[DEFENSE COUNSEL]: Yes, Judge. Well, we submit that the claims are false. There may be different opinions about that, but we submit the claims are false. The Court already heard, I think, some information or testimony that following the homicide of Gilbert Vallejo, there were a number of witnesses interviewed in the neighborhood and vicinity where this occurred who claim they saw someone running from the scene.

There were identification procedures done, live lineups and photo spreads, and with the exception of Keith Sweat, who did not ID him and then later he did, the others have either been tentative or negative, including identifying another individual in the identification procedures by some witnesses.

So, I mean, I guess that's up to the jury. But for the reasons that we offered the other confessions, I won't go through that whole litany, I just adopt all the arguments that we had in that regard. We would propose to ask those few questions of this detective.

…

[STATE]: The defense counsel's position is that this is a false confession, and his argument in support of that is the fact that we have an eyeball witness who's identified the defendant as the shooter or as seen running away from the crime.

Frankly, I don't see where that bolsters his case much, especially in light of the fact the ballistics match the other murder which he's also confessed and which he's tied to for DNA and fingerprint evidence. So no, Your Honor, whatever minimal relevance there is is greatly outweighed.

THE COURT: Well, the Court at this time is going to sustain the State's relevancy objection to the proposed questions and answers.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[8] We review the trial court's decision to exclude the evidence under an abuse of discretion standard.[9]

The defense theory was that the appellant had confessed to murders and other crimes that he did not commit; because he had made such false confessions to other crimes, his confession to the capital murder in the instant case was not credible. However, the appellant failed to proffer any meaningful evidence that the appellant's confession to the Vallejo murder was false; his proffer was only that the State's "identification procedures" were inconclusive, which did not show that the appellant's confession was false. Without proof of its falsity, the appellant's confession to the Vallejo murder did not have a tendency to make the falsity of his confession to the Freeman and Silva murders more probable than it would be without such evidence. The trial court therefore did not abuse its discretion in excluding the evidence for lack of relevance. Point of error six is overruled.

## B. Photographs

In his seventh point of error, the appellant argues that the trial court erred in admitting two crime-scene photographs of the victims. Specifically, he argues that the

---

[8] TEX. R. EVID. 401.

[9] *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Cr. App. 2006).

photographs should have been excluded under Rule of Evidence 403 because they were unnecessarily "graphic" and "gruesome."

Rule 403 allows the trial court to exclude evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." A Rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.[10] In the context of photographs, we also consider factors including "the number of photographs, the size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body has been altered by autopsy."[11] The trial court's decision to admit or exclude such evidence is reviewed under an abuse of discretion standard.[12]

The photographs at issue were introduced during the testimony of crime-scene officer Robert Presney. The photographs were each in color and four by six inches in size. State's Exhibit 48 shows Silva lying in the ditch with his hands over his head. Presney

---

[10] *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Cr. App. 2004).

[11] *Id*.

[12] *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Cr. App. 1991).

used the photo to show some of Silva's injuries but also to show that Silva was most likely dragged by his feet to this position. State's Exhibit 50 shows a gunshot wound to the back of Freeman's head.

The appellant argues that the State "introduced other, less graphic photographs of the crime scene, rendering exhibits 48 and 50 useless, except for the purpose of offering prejudicial material that could have inflamed the jurors." We disagree. State's Exhibits 48 and 50 showed the condition of the victims as they were discovered at the side of the road. The photographs had significant probative value in corroborating details of the appellant's confession with respect to the manner of killing the victims and disposing of their bodies. The photographs therefore rebutted the defensive theory that the appellant gave a false confession. Furthermore, the photographs were not particularly offensive, they were not enhanced in any way, and they portrayed no more than the gruesomeness of the injuries inflicted during the offense.[13] After reviewing the photographs, we are not persuaded that the danger of unfair prejudice substantially outweighed their probative value. The trial court did not abuse its discretion in admitting these exhibits. Point of error seven is overruled.

## C. Confession

In his tenth point of error, the appellant argues that the trial court erred in denying his motion to suppress one of his inculpatory statements. He argues that simply reading

---

[13] *See Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Cr. App. 1992).

him *Miranda*[14] warnings after he indicated that he wanted to speak with a detective was insufficient to waive his earlier request for counsel.

A pre-trial hearing was held on the appellant's motion to suppress. The trial court filed written findings of fact and conclusions of law based on the evidence presented at the hearing; the appellant makes no suggestion that the trial court's findings of fact are unsupported by the record. The trial court's findings and conclusions, in pertinent part, are as follows:

> The Court finds that Detective Cheryl Johnson, a police officer for the City of Fort Worth, was assigned to investigate a capital murder offense involving the deaths of Willie Freeman and Mike Silva on October 28, 2005. The Court finds that Detective Jose Hernandez, a police officer for the City of Fort Worth, was assigned to investigate a murder offense involving the death of Gilbert Vallejo on October 26, 2005.
>
> …
>
> The Court finds that after the [Defendant's] statements were taken [by Detective Johnson] on November 8, 2005, the Defendant agreed to take a polygraph examination and that he was taken by police officers to Dallas, Texas, for that purpose. The Court finds that the Defendant then told Detective Johnson that he would not take a polygraph exam without a lawyer present. The Court finds that the polygraph exam was not done, that the Defendant was returned to Fort Worth and that he was placed back in jail.
>
> The Court finds that the Defendant was part of a lineup conducted at the Tarrant County Jail on November 16, 2005, and that after the lineup was concluded the Defendant asked Detective Johnson if he could talk to her. The Court finds that the Defendant initiated this contact with Detective

---

[14] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Johnson and that she informed him that if he wished to speak with her, he could send her a [written message] and that she would talk to him ….

The Court finds that Detective Johnson received an envelope with a small piece of paper from the Defendant asking her to come speak with him on November 29, 2005, and that on November 30, 2005, she received a [written message] from the Defendant strongly urging her to come speak with him… .

The Court finds that the Defendant was also checked out of jail by the police … on December 14, 2005, for a conversation which was recorded ….

The Court finds that the Defendant initiated contact with Detective Johnson on November 16, 2005, and again on November 29 and 30, 2005, and that he never invoked his right to remain silent and not to talk to the police at any time on or after November 16, 2005 …. The Court finds that the Defendant freely, knowingly, intelligently, and voluntarily waived his right to an attorney and insisted on talking to the police despite advice to the contrary from counsel at all times after November 16, 2005 ….

…

State's Exhibit No. 3 is the statement taken by Detective Hernandez on December 14, 2005 …. The Court finds that Detective Hernandez warned the Defendant of his *Miranda* warnings and rights prior to the statement and during the recording and that the Defendant freely, knowingly, intelligently, and voluntarily waived all of these rights. The Court finds that the Defendant had invoked his Fifth Amendment right to counsel and to remain silent previously on November 8, 2005, when he refused to take a polygraph without a lawyer present. The Court finds that the Defendant subsequently initiated contact with the police on the several instances as discussed above and never invoked his right to counsel after initiating contact with the police as discussed above and actually disregarded advice from counsel. The Court finds that the statements contained in State's Exhibit No. 3 relating to the offense of capital murder of Willie Freeman and Mike Silva are admissible.

We review the trial court's ruling on the motion to suppress for abuse of discretion.[15] In reviewing the trial court's ruling, we give almost total deference to the trial court's determination of historical facts, especially when that determination is based on the court's evaluation of credibility and demeanor.[16] We review *de novo* questions of application of law to fact that do not turn on an evaluation of credibility and demeanor.[17]

The Fifth Amendment right to counsel requires that once a suspect has expressed his desire to deal with police only through counsel, he may not be subjected to further interrogation until counsel has been made available, "unless the accused himself initiates further communication, exchanges or conversation with the police."[18] A suspect is deemed to have waived his previously-invoked right to counsel only when (1) the suspect himself initiates further communication with police, and (2) after he re-initiates communication with police, the suspect validly waives the right to counsel.[19] Once communication is re-initiated, police are free to re-initiate any future communications and

---

[15] *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Cr. App. 1996).

[16] *Guzman*, 955 S.W.2d, at 89.

[17] *Id.*

[18] *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

[19] *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-45 (1983) (plurality op.).

obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.[20]

We must give almost total deference to the trial court's determination of historical facts. After invoking his Fifth Amendment right to counsel on November 8, 2005, the appellant initiated communication with Detective Johnson on November 16, 29, and 30. The appellant then received *Miranda* warnings and explicitly waived his right to counsel prior to his December 14 statement to Detective Hernandez. The appellant does not contest these fact findings, but argues that this waiver was involuntary due to his "diminished mental capacity and the fact that the written warnings that preceded the second statements included the confusing reference to rights appellant had already invoked." However, the appellant fails to direct our attention to any evidence of "diminished mental capacity" in the record and fails to explain how re-administration of the *Miranda* warnings created "confusing references" that resulted in an involuntary waiver. After reviewing the record and the recorded statement, we agree with the trial court's conclusion that the appellant's waiver was voluntary. The trial court did not abuse its discretion in denying the appellant's motion to suppress. Point of error ten is overruled.

---

[20] *Cross v. State*, 144 S.W.3d 521, 529 (Tex. Cr. App. 2004).

## IV. GUILT PHASE JURY CHARGE

In his eighth point of error, the appellant argues that the trial court erred in failing to instruct the jury on a lesser-included offense. He argues on appeal that he was entitled to an instruction on the lesser-included offense of "felony murder"[21] "[b]ecause it would have been within the jury's authority to determine from the testimony that Mike Silva may have been intentionally killed by appellant after Willie Freeman was shot by appellant in an *unintentional* killing." The appellant argued at trial, however, that he was entitled to an instruction on the lesser-included offense of "murder"[22] because "the jury could conclude … that the offense causing the death of Willie Freeman [and] causing the death of Mike Silva were not committed in the same criminal transaction or, in fact, by the same individual."

We use a two-prong test to determine whether the appellant was entitled to a charge on a lesser-included offense: "First, the lesser-included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense."[23]

---

[21] *See* TEX. PENAL CODE §19.02 (b)(3).

[22] *See* TEX. PENAL CODE §19.02 (b)(1).

[23] *Smith v. State*, 297 S.W.3d 260, 274 (Tex. Cr. App. 2009); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Cr. App. 1993).

The State argues that the appellant has failed to preserve his complaint for review,[24] that "felony murder is not a lesser-included offense of capital murder as charged in the indictment," and that "the record is wholly devoid of any evidence to support Appellant's assertion that he might have intentionally killed Silva after he unintentionally killed Freeman." Without addressing the State's first two arguments, we note simply that the Appellant has neglected to cite any evidence whatsoever that he killed Freeman unintentionally or that the murders of Freeman and Silva were not committed in the same transaction or by the same individual. The appellant has therefore failed to present any evidence supporting the second prong of the test under either of his theories. The trial court did not err in refusing the requested instruction. Point of error eight is overruled.

## V. PUNISHMENT PHASE EVIDENCE

In his third point of error, the appellant argues that the trial court erred in permitting the State to introduce expert testimony interpreting the meaning of the appellant's tattoos without providing pretrial notice of such testimony pursuant to Rule of Evidence 404(b). In his fourth point of error, the appellant argues that the trial court erred in denying his motion to exclude the expert testimony under Rule of Evidence 403. In his fifth point of error, the appellant argues that the trial court erred in denying his motion for a continuance to allow him time to secure his own symbolism expert.

---

[24] *See* TEX R. APP. PROC. 33.1(a)(1)(A) ("As a prerequisite to presenting a complaint for appellate review, the record must show that … the complaint was made to the trial court by a timely request, objection, or motion that … stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context ….").

Article 37.071, Section 2(a)(1) of the Code of Criminal Procedure allows the parties to present evidence during the punishment phase of a capital trial "as to any matter that the court deems relevant to sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty." The State need provide the defendant with pretrial notice of its intent to introduce such evidence only when it involves "extraneous conduct": "The introduction of evidence of extraneous conduct is governed by the notice requirements of Section 3(g), Article 37.07."[25] Article 37.07, Section 3(g) requires, "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." Rule 404(b), in turn, provides substantive and procedural limitations on the admission of certain types of character evidence:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

In this case the appellant made a timely request for such Rule 404(b) notice. In response, the State provided notice of its intent to introduce evidence proving, *inter alia*,

---

[25] This notice provision became effective on September 1, 2005. *See* Act of June 17, 2005, 79th Leg., R.S., ch. 399.

"that the Defendant is an admitted member or associate of the Confederate Hammerskins

and is a Satanist." At trial, the appellant objected before the testimony of expert witness

Deputy Richard Almendariz. The appellant argued that the State did not provide notice

that it intended to prove these matters by introducing Almendariz's expert testimony

interpreting symbols in the appellant's tattoos[26]:

> [The notice] [d]oesn't mention anything about any tattoos of symbols or any interpretation of any symbols. If they have someone who's going to come in and say that … the defendant has admitted membership in the Confederate Hammerskins or admitted association with the Confederate Hammerskins, then I suppose they could possibly do so if they have this person on their witness list. But this requires an interpretation of this officer. And the reason we are entitled to notice is if they said, we're going to offer evidence of tattoos that show such and such, that we might secure an expert to have a different opinion about the interpretation of some artwork on the defendant's body. We're not prepared to do so. It's not in the notice. And so we object to it.

The trial court denied the appellant's objection, and Almendariz testified about the

symbols in the appellant's tattoos.

Laying aside the questions of (1) whether the notice provided by the State was

sufficiently detailed to comply with Rule 404(b), and (2) whether the State was even

required to give notice of these matters as "extraneous conduct" under Article 37.071, we

find that the appellant has not demonstrated harm from any error. Under Rule of

Appellate Procedure 44.2(b), we disregard non-constitutional errors that do not affect

---

[26] Among other symbols, the appellant's numerous tattoos incorporated common satanic symbols, swastikas, and a life-size visage of Adolf Hitler.

substantial rights.[27] Rather than analyze the harm from Almendariz's substantive testimony, we look only at the harm that may have been caused by the lack of notice and the effect that the lack of notice had on the appellant's ability to mount an adequate defense.[28]

Almendariz testified that the appellant's tattoos contained Satanic, Confederate Hammerskin, skinhead, white supremacist, and Nazi symbols. However, Almendariz did not testify about any of the specific beliefs or activities of any of these groups or ideologies. The appellant testified that he was not a Satanist "*per se*" or a member of the Confederate Hammerskins. He testified instead that his various tattoos were either remnants from his youth in the Dirty South Nazis gang or were "mostly hype" to keep other prison inmates away from him.

Rather than disputing Almendariz's opinion on Satanic and Nazi symbolism, the appellant's trial strategy was to explain why he had the tattoos, and to correct the record with respect to which Nazi gang he was in. Given the limited nature of Almendariz's testimony and the appellant's strategy,[29] we do not find that the appellant's ability to

---

[27] *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Cr. App. 2005) (applying Rule 44.2(b) harm analysis where evidence of uncharged misconduct was admitted without notice).

[28] *Id.* In his brief harm analysis, the appellant fails to address any harm from lack of notice, but instead only alleges harm arising from the substance of Almendariz's testimony.

[29] *See McDonald*, 179 S.W.3d, at 578-79 (analyzing trial strategy to determine harm from lack of notice).

mount an adequate defense was affected by any lack of specificity in the State's notice. Point of error three is overruled.

In his fourth point of error, the appellant argues that the trial court erred in admitting Almendariz's testimony over his objection that the evidence was more prejudicial than probative.[30] However, the appellant did not object at trial under Rule 403.[31] Because the appellant's argument on appeal does not comport with his objection at trial, he has failed to preserve it for our review.[32] Point of error four is overruled.

In his fifth point of error, the appellant argues that the trial court erred in denying his oral motion for a continuance to allow him to obtain his own symbolism expert. Article 29.03 of the Code of Criminal Procedure allows a criminal action to be continued "on the written motion of the State or of the defendant." If a party makes an oral motion for continuance and the trial court denies it, the party forfeits the right to complain about the trial court's ruling on appeal.[33] The record in this case contains no written motion for continuance. Point of error five is overruled.

---

[30] *See* TEX. R. EVID. 403.

[31] The appellant objected to the admission of specific tattoo photos under Rule 403, but did not object to Almendariz's testimony on that basis.

[32] *See* TEX. R. APP. P. 33.1(a).

[33] *Anderson v. State*, 301 S.W.3d 276, 278-79 (Tex. Cr. App. 2009).

## VI. CONSTITUTIONAL OBJECTIONS TO SENTENCING PROCEDURES

In his ninth point of error, the appellant argues that the trial court erred in denying his "motion to preclude the imposition of the death penalty on grounds that there was no grand jury review of the death penalty eligibility factors in his case." We have previously decided this issue adversely to the appellant.[34] Point of error nine is overruled.

In his eleventh point of error, the appellant argues that Article 37.071, Section 2(d)(2) of the Code of Criminal Procedure, commonly known as the "10-12 Rule," is in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Federal Constitution. We have previously decided this issue adversely to the appellant.[35] Point of error eleven is overruled.

In his twelfth point of error, the appellant argues that the Texas death-penalty scheme is unconstitutional because it fails to place the burden of proof on the State to prove the absence of mitigation beyond a reasonable doubt. We have previously decided this issue adversely to the appellant.[36] Point of error twelve is overruled.

In his thirteenth point of error, the appellant argues that the trial court erred in failing to instruct the jury that the State had to prove that the aggravating evidence outweighed the mitigating evidence. We have previously held that the mitigation special

---

[34] *See Renteria v. State*, 206 S.W.3d 689, 709 (Tex. Cr. App. 2006).

[35] *See Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Cr. App. 2005).

[36] *See Escamilla*, 143 S.W.3d, at 828.

issue is a defensive issue on which the State has no burden of proof.[37] Point of error thirteen is overruled.

In his fourteenth point of error, the appellant argues that the Texas death penalty scheme is unconstitutional because it fails to require the jury to consider mitigation. Specifically, he argues that the jury instructions should require jurors to "consider mitigation, not consider whether there is sufficient mitigating evidence to warrant a life sentence." The appellant fails to present any argument or authority supporting the constitutional significance of this distinction.[38] Point of error fourteen is overruled.

In his fifteenth point of error, the appellant argues that the trial court erred in failing to instruct the jury that if a single juror "holds out" for life, the appellant would receive a life sentence. We have previously decided this issue adversely to the appellant.[39] Point of error fifteen is overruled.

Finally, in his sixteenth point of error, the appellant argues that the Texas death penalty scheme is unconstitutional because jurors are not given a definition for the term

---

[37] *See Williams v. State*, 273 S.W.3d 200, 221-22 (Tex. Cr. App. 2008).

[38] *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

[39] *See Shannon v. State*, 942 S.W.2d 591, 600-01 (Tex. Cr. App. 1996).

"mitigating circumstances." We have previously decided this issue adversely to the appellant.[40] Point of error sixteen is overruled.

We affirm the judgment of the trial court.

Delivered October 20, 2010.
Do not publish.

---

[40] *See Ladd v. State*, 3 S.W.3d 547, 574 (Tex. Cr. App. 1999).